**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **GLENDA F. HARRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:09-cv-00765-TFM** |
| **MICHAEL J. ASTURE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401x et seq., Glenda F. Harris, ("Harris" or "Plaintiff") requested and received a hearing before an administrative law judge ("ALJ") who rendered and unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. §636(c), and for reasons herein explained, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I.    NATURE OF THE CASE

Harris seeks judicial review of the Commissioner's decision denying her request for disability insurance benefits. This court may conduct limited review of such a decision to determine whether it complies with applicable law and is supported by substantial evidence. 42 U.S.C. § 405 (2006). The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id*.

## II.  STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits in narrowly circumscribed. The court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court "may not decided the facts anew, reweigh the evidence, or substitute [its] judgment of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (stating that the court should not re-weigh the evidence). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis*, 125 F.3d at 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) and *MacGregor v. Bowen*, 785 F.2d 1050, 1053 (11th Cir. 1986)); Foot, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 42 U.S. at 401, 91 S. Ct. at 1427).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact,

and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) ("even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence."). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dept. of Health and Human Svcs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1996).

### III.    BACKGROUND AND PROCEEDINGS

Harris filed a claim for social security disability benefits on February 26, 2006, alleging that the period of disability began on February 15, 2006. (Tr. 62). Her claim was initially denied on April 18, 2006. *Id.*  On June 21, 2006, Harris requested a hearing before an administrative law judge ("ALJ"). (Tr. 71). On March 25, 2008, Attorney Chad A. Napier represented Harris at the hearing before ALJ Steven L. Carnes. (Tr. 25). The ALJ heard testimony from Harris (Tr. 32-47) and a vocational expert, Michael McClanahan (Tr. 47-58). On May 12, 2008, ALJ Carnes ruled against Harris. (Tr. 10-24). Harris sought administrative review of the decision on May 22, 2008. (Tr. 5). On June 16,

2008, the Social Security Administration's Appeals Council denied Harris' request for review of the ALJ's decision. (Tr. 1-4). The case was subsequently filed in this court on August 13, 2009. *See* Doc. 1, Complaint.

## IV.    ADMINISTRATIVE DECISION

### A. Sequential Evaluation Process

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.1520, 416.920 (2005); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). When a claimant is found disabled – or not – at an early step, the remaining steps are not considered. *Id*. This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yucker*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 91987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step Four. *See Phillips*, 357 F.3d at 1237-39. As such, the claimant bears the burden of proving the following: (1) whether she is currently performing substantial gainful activity; (2) whether she has a severe impairment; (3) whether that severe impairment meets or exceeds an impairment described in the listings; and (4) whether she can perform her past relevant work. *Id*. A *prima facie* case of qualifying disability exists when a claimant carries the Step One through Step Four burden. Only at Step Five does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

4

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). *Id*. at 1238-39. RFC represents the claimant's abilities despite her impairments, and is based on all relevant medical and other evidence. *Id*. Moreover, it can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform, *Id*. at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or call a vocational expert. *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.  Otherwise, the ALJ may use a vocational expert.  *Id*.  A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments.  *Id*.  In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.  *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

**B. Findings and Conclusions**

Applying the five-step analysis, the ALJ first found that Harris has not engaged in substantial gainful activity since February 15, 2006. (Tr. 12). At Step Two of his decision, the ALJ found the following severe impairments to Harris' health:

5

"fibromyalgia; osteoarthritis; carpal tunnel syndrome; status post herniated nucleus pulposus C6-7 with fusion; status post herniated nucleus pulposus C5-6 with fusion; status post cervical spondylosis; chondroplasty left knee; and migraine headaches." (Tr. 12). At Step Three, the ALJ found that the impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth in the listings. (Tr. 12).

At Step Four, the ALJ reviewed the entire record including Harris' symptoms and the opinion of the vocational expert. (Tr. 13). The ALJ concluded that, on the basis of the entire record, Harris has the RFC to do "light work" with a "sit/stand option." (Tr. 13). The ALJ found that Harris can "use her hands for simply grasping; pushing and pulling of arm controls; and fine manipulations." (Tr. 13). In addition, the ALJ concluded that Harris can "occasionally use her right leg for pushing and pulling of leg controls, frequently using her left leg for pushing and pulling of leg controls, and occasionally stoop and crouch." (Tr. 13). She can never kneel, crawl, climb, or balance. (Tr. 13). She can frequently reach overhead. (Tr. 13). Harris can occasionally work at activities involving substantial heights, moving machinery, and exposure to marked changes in temperature and humidity. (Tr. 13) She is never able to work activities involving driving automotive equipment, or exposure to dust, fumes, and gases. (Tr. 13).

At Step Five, the ALJ determined that Harris is "unable to perform any relevant past work." (Tr. 22). However, the ALJ concluded that, considering the claimant's residual functioning capacity, age, education, and work experience and the testimony of the vocational expert, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 23-24). Specifically,

the ALJ found that Harris can perform the requirements of the representative occupations

such as hotel clerk, sales clerk, or desk clerk. (Tr. 24). In summary, the ALJ concluded

that the claimant was not disabled since February 15, 2006. (Tr. 24).

## V.    ISSUES

Harris raises two issues on appeal:

(1)    Whether the ALJ properly applied the two-part "pain standard?"

(2)    Whether the ALJ failed to issue a proper credibility finding in compliance
       with the law of the Eleventh Circuit?

Pl. Br. at 5.

The Commissioner responds that the ALJ "considered and reasonably resolved

conflicting evidence" and that the ALJ's decision is "supported by substantial evidence

and is free of reversible error." Def. Br. at 8.

## VI.    DISCUSSION AND ANALYSIS

During the hearing before the ALJ, Harris testified that she suffers from muscle

spasms in her neck, fibromyalgia, carpal tunnel syndrome, restless leg syndrome, bursitis,

arthritis, and allergies. (Tr. 35-36). She also described the pain as tightening, shooting

pain with the muscle spasms, and pounding pain with the headaches. (Tr. 36-37). Harris

stated that the pain is real strong, lasts a couple of days, and occurs 2-3 times a month.

(Tr. 37-38). Harris reported taking Lortab, muscle relaxers, and Maxalt, and that these

medications relieve her pain some days but makes her "sleep a lot." (Tr. 38). She

maintained that her conditions cause occasional problems handling objects, gripping,

manipulating objects, and feeling. (Tr. 39-40). She further testified that she is able to lift

10 pounds, stand for 30 minutes at one time, and stand for 2 hours in an 8-hour workday.

(Tr. 40). She is able to walk for 30 minutes at one time and walk for 1 hour in an 8-hour workday. (Tr. 41). She is able to sit for 30-40 minutes at a time and sit for 2 hours in an 8-hour workday. (Tr. 40-41). Harris testified that she is not able to bend, stoop, and is only capable of carrying 5 pounds. (Tr. 41.).

**A.      Whether the ALJ properly applied the two-part pain standard?**

The Eleventh Circuit has established a three-part pain standard that applies whenever a claimant asserts disability through testimony of pain or other subjective symptoms. The test requires: (1) evidence of an underlying medical condition; and (2) either (A) objective medical evidence confirming the severity of the alleged pain; or (B) that the objectively determined medical condition can reasonably be expected to give rise to the alleged pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).[1] The pain standard requires the commissioner to consider a claimant's subjective testimony of pain if he finds evidence of an underlying condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1996). If the Commissioner fails to articulate a reason for refusing to credit a claimant's subjective testimony of pain, then the Commissioner has, as a matter of law, accepted the testimony as true. *Wilson*, 284 F.3d at 1215.

The medical evidence confirms that Harris suffers from a number of underlying medical conditions. For example, Harris' medical records reveals that she suffers from muscle spasms in her neck, fibromyalgia, carpal tunnel syndrome, restless leg syndrome,

---

[1] The two part "pain standard" in this opinion is the same test referred to as the three-part "pain standard" in *Wilson v. Barnhart*. The ALJ, Harris, and the Commissioner all reference pain standard as the two-part pain standard. To avoid confusion, this opinion will also reference the pain standard  as the two-part "pain standard."

bursitis, arthritis, and allergies. On February 4, 2004, Harris underwent an anterior cervical discectomy and fusion at C5-6. (Tr. 213). She underwent the same procedure on her C6-7 on February 27, 2006. (Tr. 194). She has been treated by Dr. Boiser on multiple occasions for headaches and muscle spasms in her neck. (Tr. 273-77). Therefore, Harris meets the first prong of the pain standard.

In regards to the second prong of the pain standard, the ALJ found that Harris' medically determinable impairments could reasonably be found to cause pain to the extent alleged. Specifically, the ALJ found that Harris suffers from muscle spasms in her neck, fibromyalgia, carpal tunnel syndrome, restless leg syndrome, bursitis, arthritis, and allergies. (Tr. 12).

The court finds that the ALJ correctly applied the Eleventh Circuit's pain standard when he found that Harris suffered from those medically determinable impairments and that those impairments could reasonably be expected to produce the alleged symptoms. The ALJ, however, determined that Harris' testimony of disabling pain was not credible.

**B.      Whether the ALJ failed to issue a proper credibility finding in compliance with the law of the Eleventh Circuit?**

In determining whether the pain standard is met, the credibility of the claimant's testimony must be considered. *Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir. 1988); *see also Holley v. Chater*, 931 F. Supp. 840, 847 (S.D. Fla. 1996) (noting that a claimant's statements regarding pain alone will not establish disability as the underlying impairment or cause of the pain must be medically determinable). The ALJ may discredit the claimant's subjective testimony if he decides that the testimony lacks credibility. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "The decision concerning the plaintiff's

credibility is a function solely within the control of the Commissioner and not the courts." *Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1213 (M.D. Ala. 2002) (citations omitted). However, if an ALJ discredits subjective pain testimony, he must explicitly justify his reasons for his decision. *Moore v. Barnhart*, 405 F.3d 1208, 1212 n.4 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)). Thus, an ALJ's authority to discredit a claimant's testimony relating to pain or other symptoms is limited by an ALJ's obligation to leave a record of his reasoning. *Id*. (citing *Cannon*, 858 F.2d at 1545).

Here, the ALJ had the benefit of substantial medical records of treating physicians that detailed Harris' various impairments. The ALJ properly gave substantial weight to the opinions of Harris' treating physicians. (Tr. 20). The opinion of treating physicians "must be given substantial and considerable weight unless 'good cause' is show to the contrary. *Phillips v. Barnhart*, 357 F.3d  1232, 1240 (11th Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d 1436 1440 (11th Cir. 1997) (holding that the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error)). The ALJ found that Harris' "statements concerning the intensity, persistence, and limiting effects" of the symptoms are not credible because they are "inconsistent with the residual functional capacity assessment." (Tr. 21).

The ALJ may base his findings on the record as a whole. *See Dyer v. Barnhart*, 295 F.3d 1206, 1212 (11th Cir. 2005). Specifically, the ALJ found that Harris did not suffer from muscle atrophy, or disruption of sensory or motor function that would likely result from the amount pain she alleged. (Tr. 21). Muscle atrophy is an objective medical indication of pain and the lack thereof in Harris militates against the conclusion that she suffers from pain which prevents her from substantial gainful activity. *See Johns v.*

10

*Bowen*, 821 F.2d 551, 556 (11th Cir. 1987). A condition that is remedied through treatment is not a disability. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987)).

The ALJ noted that Harris' fibromyalgia is fairly well-controlled by medication. (Tr. 22). After the anterior cervical discectomy and fusion of the C5-6 and C6-7, Harris had occasional pain, but she did not require further surgeries. (Tr. 22). The ALJ noted that Dr. Frazier treated Harris' allergies and she did not require further treatment. (Tr. 22). She did not require surgery for carpel tunnel syndrome. (Tr. 22). Her headaches improved after receiving Maxalt for treatment and she did not require frequent emergency room or hospital visits. (Tr. 22).

Furthermore, the ALJ referenced Harris' medical records, which showed that, despite her impairments, Harris had normal muscle tone, strength, gait, and range of motion. (Tr. 276). Finally, the ALJ concluded that, though Harris clearly suffers from a number of underlying medical impairments, Harris' testimony was inconsistent with the objective abnormalities established by the record. (Tr. 22). He further found that her impairments do not equate to the kind of unrelenting pain that Harris claims in her testimony and therefore, her testimony is not credible. (Tr. 22).  Thus, the court finds that the ALJ adequately explained his reasons for discrediting Harris' subjective testimony as to her pain and his reasoning is supported by substantial evidence as documented in the ALJ's opinion.

**C.      Remand is Required for the ALJ to Issue Findings as to the Side Effects of Harris' Medications**

Finally, Harris asserts that the ALJ failed to consider the effects of her medications on her ability to work. "It is conceivable that the side effects of medications could render a claimant disabled or at least contribute to a disability." *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981). Harris reported taking Lortab, muscle relaxers, and Maxalt. (Tr. 38). The ALJ questioned Harris about the side effects of her medication and she testified that the medications make her "sleepy a lot." (Tr. 38). The ALJ made no other inquiries into Harris' alleged side effects and failed to incorporate the alleged side effects in his hypothetical to the vocational expert. On cross-examination, Harris testified for the second time that her medication made her "sleepy" and added that they caused her to sleep two hours a day. (Tr. 45). Despite her testimony, the ALJ opinion does not address the impact these side effects would have upon Harris' ability to work.

The Commissioner contends that the ALJ had no duty to inquire into Harris' alleged side effects because Harris' medical records do not mention significant side effects, and Harris reported no side effects in April 2006. Df. Br. 13. While this evidence may be relevant to the ALJ's determination, the ALJ should have at least mentioned Harris' claim of side effects, making it possible for the court to know that the claim was not entirely ignored. *See Cowart*, 662 F.2d at 737 (citing *Figueroa v. Sec. of HEW,* 585 F.2d 551 (1st Cir. 1978)).

The ALJ has a basic duty to fully develop the record, even if the Plaintiff is represented by counsel. *See Cowart,* 662 F.2d at 735 (explaining that a hearing before the

ALJ is not an adversarial hearing; therefore, the ALJ has a basic obligation to develop a full and fair record… This duty requires the ALJ to 'scrupulously and conscientiously prove into, inquire of, and explore for all the relevant facts'). The ALJ must make a finding regarding the alleged side effects of prescription medications on Harris' ability to work and the absence of a finding does not permit the court to determine whether the ALJ's decision is supported by substantial evidence. *See McDevitt v. Comm. of Soc. Sec.*, 241 Fed.Appx. 615, 619 (11th Cir. 2007) (finding that the ALJ's determination that Plaintiff was not disabled was not supported by substantial evidence in the absence of findings regarding the claimant's allegations that medication caused severe concentration problems and drowsiness).

The ALJ is responsible for making a finding regarding the side effects Harris alleges. *See McDaniel v. Bowen*, 800 F.2d 1026, 1032 (11th Cir. 1986). It is not appropriate for the court to assume the role of the ALJ. *See Id.* However, the court will uphold the ALJ's decision even if his reasoning is not ideally clear. *Dixon v. Astrue*, 312 Fed. Appx. 226, 229 (11th Cir. 2009). The ALJ, however, must give the court some indication that he considered the side effects of Harris' medications on her ability to work. In this case, the ALJ gave the court nothing at all. Accordingly, upon remand, the Commissioner should make findings regarding the alleged side effects of Harris' medication on her ability to work.

## VII. CONCLUSION

Pursuant to the findings of this Opinion, the Court concludes that the ALJ properly applied the Eleventh Circuit's pain standard, and his credibility determination as to Plaintiff's pain testimony is based on substantial evidence. However, the ALJ failed to

properly consider the alleged side effects of the Plaintiff's medications. Therefore, it is ORDERED that the decision of the Commissioner is **REVERSED AND REMANDED** with instructions that the Commissioner should make a finding regarding the alleged side effects of the Plaintiff's medications.

DONE this 7th day of September, 2010.


/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE